# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**FILED**

FEB 12 2004
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

JOSEPH GORMLEY,

    Plaintiff,

vs.

Case No. 03-71380

PRECISION EXTRUSIONS, INC.,

HON. AVERN COHN

    Defendant.
_____/

## MEMORANDUM AND ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
## AND
## GRANTING PLAINTIFF'S MOTION TO FILE A THIRD AMENDED COMPLAINT[1]

### I. Introduction

This is a case by a manufacturers sales representative to recover sales commissions. Plaintiff Joseph Gormley (Gormley) is suing defendant Precision Extrusions, Inc. (Precision). Although Gormley has filed a complaint, an amended complaint, and a second amended complaint with varied claims, he essentially claims that he was wrongfully denied sales commissions based on a verbal agreement between the parties and that the parties' later written agreement between the parties is unenforceable.

Before the Court is Precision's motion to dismiss the Second Amended Complaint and Gormley's motion to for leave to file a Third Amended Complaint. For

---

[1] Although the Court scheduled these motions for oral argument, upon review of the papers, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

the reasons that follow, Precision's motion is DENIED and Gormley's motion is GRANTED.

## II. Procedural History

This case has involved a great deal of attorney effort in what is essentially sideways movement. On April 8, 2003, Gormley filed a complaint against Precision presenting the following claims: (1) procurement of account, (2) procuring cause doctrine, and (3) illegal attempt to revise agreement. On June 6, 2003, Precision filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for failure to comply with the notice pleading requirements under Fed. R. Civ. P. 8(a). Before the motion could be heard, on July 28, 2003, the Court, by stipulated order, allowed Gormley to file a First Amended Complaint.[2] On August 3, 2003, Gormley filed a First Amended Complaint, presenting the following claims: (1) procurement of account, (2) procuring cause doctrine, and (3) unjust enrichment, (4) promissory estoppel, (5) bad faith termination of contract, and (6) illegal attempt to revise agreement.

On August 27, 2003, Precision filed a motion to dismiss for improper venue or in the alternative to transfer venue to the Northern District of Illinois. On October 8, 2003, Gormley filed a response to the motion together with a motion for leave to file a Second Amended Complaint. On October 24, 2003, the Court denied Precision's motion and granted Gormley's motion.[3] See Memorandum and Order Granting Motion for Leave to

---

[2] Precision withdrew its motion to dismiss on July 31, 2003.

[3] There was no hearing on the motions.

2

Amend to File Second Amended Complaint and Denying Motion to Dismiss. The Court also issued a scheduling order that date.

On November 13, 2003, Gormley filed a Second Amended Complaint, presenting the following claims: (1) breach of contract, (2) procuring cause doctrine, and (3) violation of Illinois Sales Representative Act.

On December 1, 2004, Precision filed the instant motion to dismiss for failure to state a claim as to counts one and two and for failure to satisfy Fed. R. Civ. 8(a) as to count three.

On January 9, 2004, Gormley filed a response to the motion to dismiss together with a motion for leave to file a Third Amended Complaint. Gormley's now proposed complaint seeks to raise the following claims: (1) breach of verbal customer procurement agreement, (2) procuring cause doctrine, and (3) violation of Sales Representative Acts of Illinois and Michigan. Precision objects on the grounds the amendments would be futile.

### III. Factual Background

#### A.[4]

Precision is an Illinois corporation located in Bensenville, Illinois.[5] Gormley is a citizen of Michigan and a former manufacturers representative for Precision. Gormley alleges that he was authorized in 1991 to "procure business for [Precision] on a 5%

---

[4]The Background is substantially taken from the October 24, 2003 Memorandum.

[5]It is not clear what products Precision manufacturers or what products Gormley sold for Precision.

3

SEP-06-2005 15:08 FRANCZEK SULLIVAN P C 3129869192 P.05
FEB-16-2004 12:03 FRANCZEK SULLIVAN P C 3129869192 P.05/16
FEB 16 2004 2:29 PM FR BUTZEL LONG/DETROIT 3 TO 913129869192,159 P.05

Case 2:03-cv-71380-RAC Doc # 67 Filed 02/12/04 Pg 4 of 9 Pg ID 273

commission basis." Second Amended Complaint at ¶ 6. In 1994, he procured the Trelleborg account "and several blanket purchase orders and additional purchase order which were in effect at the time" of his termination. In 2001, he procured the Telex account "and several blanket purchase orders and additional purchase order which were in effect at the time" of his termination." Id.

Gormley alleges that prior to procuring the above accounts, he entered into a verbal agreement under which Gormley would be entitled to represent Precision "at all accounts which the plaintiff procured for the defendant so long as these procured accounts were doing business with the defendant." Second Amended Complaint at ¶ 9. In other words, Gormley says he had a "life of the part" agreement for commissions. Gormley also says that Precision "specifically confirmed [the verbal agreement] with respect to the Trelleborg and Telex accounts." Id. .

Gormley further alleges that in 2001, Precision "arbitrarily reduced" his commissions from 5% to 4.5% on parts sold.

Gormley alleges that as a result of a conversation with Precision's president during a meeting in Bensenville, he was induced into signing a written Manufacturer's Representative Agreement on July 24, 2002. The agreement says it is governed by Illinois law. The agreement can be terminated by either party with or without cause, upon 60 days notice. The agreement also provides that in the event of termination, Gormley would only be entitled to commissions "on products scheduled to ship to customers within 60 days of the effective date of such notice of termination or cancellation."

Accordingly to Gormley, these provisions are contrary to the oral agreements

4

and do not control the parties' relationship.

On March 20, 2003, Precision terminated the agreement, subject to the 60 day notice provision. Gormley says he has not been paid all commissions due.

B.

The proposed Third Amended Complaint, according to Gormley, "simply pleads the facts and theories with more clarity." One notable addition is the specific allegation that the 1991 verbal agreement was "confirmed by verbal subsequent agreements." While Precision says that this is totally new, such an allegation was implicit in the Second Amended Complaint when Gormley stated that Precision "specifically confirmed [the 1991] agreement with respect to the Trelleborg and Telex accounts." That is, Gormley is saying that the parties had three oral agreements, in 1991, in 1994, and in 2001.

The second addition is the claim that the written agreement violates both Michigan's and Illinois's Sale Representative Acts. Presumably, Gormley added Michigan law in order to obviate a choice of law issue.

IV. Legal Standards

A. Motion to Amend

As stated in the October 24, 2003 Memorandum, under Fed.R.Civ.P. 15(a), a party may amend their pleadings after 20 days "only by leave of court or by written consent of the adverse party; and leave to amend pleadings "shall be freely given when justice so requires." The decision whether or not to permit the amendment is committed to the discretion of the trial court. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-32 (1971); Estes v. Kentucky Util. Co., 636 F.2d

5

1131, 1133 (6th Cir. 1980). This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." See Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted). In determining whether to permit amendment, some of the factors which may be considered by the district court are undue "delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Hageman v. Signal L.P. Gas, Inc. 486 F.2d 479, 484 (6th Cir. 1973). See also Forman v. Davis, 371 U.S. 178, 182 (1962). Delay by itself is not sufficient to deny a motion to amend. Hagerman, 486 F.2d at 484. See also General Elec. Co. v. Sargent & Lundy 916 F.2d 1119, 1130 (6th Cir. 1990). Moreover, in denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986).

### B. Motion to Dismiss

When analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." Sinay v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## V. Analysis

Precision argues that leave to amend should be denied because it would be futile, i.e. for essentially the same reasons that the case should be dismissed. Precision also says that Gormley's Third Amended Complaint fails for the same reasons as the Second Amended Complaint fails. Thus, the motion to dismiss will be directed toward the proposed Third Amended Complaint. First, Precision says that Gormley's breach of contract claims under counts one and two fail to state a claim because the written agreement controls; any oral agreements were superceded by the written agreement. It also says that count three is not plead with the requisite specificity.

In response, Gormley says that because he claims that the written agreement is unenforceable under state law, he can make out a claim based for breach of the parties' oral agreements. Gormley first says that Illinois law applies to this case and under Illinois law, the written agreement is unenforceable for lack of consideration and for violation of Illinois Sales Representative Act. Gormley also says that if Michigan law applies, the written agreement would still be unenforceable under Michigan's Sales Representative Act (Gormley concedes that a lack of consideration would not be a basis for non-enforcement under Michigan law).

In reply, Precision points out that in order to argue that Illinois law applies, Gormley now says that the "verbal agreement was negotiated and made in Illinois in August 1991 during a meeting." Gormley's response at p. 2. However, in arguing against a venue transfer, Gormley maintained that there were "no meetings in Illinois regarding these verbal agreements." Gormley's response to venue motion at p. 1.

7

Precision says that Gormley should be judicially estopped from arguing that Illinois law applies.

As an initial matter, while Gormley's change in position regarding where the 1991 verbal agreement took place, is not well-received, the Court's venue decision was not based solely on where the alleged oral agreements took place. Moreover, Gormley asserts, as he did before, that the 1991 verbal agreement was in essence renewed in 1994 and 2001 through telephone calls with Gormley in Michigan.

The parties then spend a good deal of time arguing over whether Illinois law applies. Interestingly, Precision, who argued that Illinois law applied in support of its venue motion, now says that Michigan law should apply. It also goes on to explain Michigan's connection with this case, a contradiction to its position in its venue motion.

Despite both parties' shifting positions as to the locus of this case, the issue on a motion to dismiss is whether Gormley has stated any claim good in law. Precision concedes that if Illinois law is applied, Gormley can make (not necessarily prevail) a claim that the written agreement is void for lack of consideration and in violation of Illinois Sales Representative Act. If Michigan law applies, he can only make out a claim that the written agreement is unenforceable under Michigan's Sales Representative Act. In either case, Gormley has stated a claim for breach of the oral agreement(s). The arguments as to what law applies are premature. Likewise, Precision's arguments that the written agreement controls are more appropriately considered on a motion for summary judgment.

8

The issue in this case will be whether the alleged oral agreement(s) are enforceable or whether the written agreement controls the parties' relationship. The Third Amended Complaint sufficiently frames the dispute and for that reason the case must go forward.

SO ORDERED.

Dated: FEB 12 2004
Detroit, Michigan

AVERN COHN
UNITED STATES DISTRICT JUDGE

A TRUE COPY
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BY _____
    DEPUTY CLERK

9